# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**STEVEN ANTHONY SERA; and**                                      **PLAINTIFFS**
**SERA FAMILY TRUST**

v.                      **Case No. 4:24-cv-00817-LPR**

**RANDY ZIMMERMAN,** *in his Individual And Official Capacities*; **KRYSTLE WILLIAMS,** *in her Individual and Official Capacities*; **SALLY SWEEDEN,** *in her Individual and Official Capacities*; **HOLLY JACKSON; and HOLLYS DAYCARE LLC**        **DEFENDANTS**

## ORDER

In this case, Plaintiffs Steven Sera and the Sera Family Trust allege that state officials—in concert with a private individual—wrongfully and maliciously delayed Mr. Sera's parole from prison.[1] Plaintiffs brought several claims under 42 U.S.C. § 1983: an alleged substantive due process violation, an alleged procedural due process violation, and an alleged Fourth Amendment violation.[2] Plaintiffs also brought claims under 42 U.S.C. § 1985(3), alleging a conspiracy to deprive Mr. Sera of his rights under the Due Process Clause and the Fourth Amendment.[3] Finally, Plaintiffs brought a number of state law claims.[4]

The State Defendants are Randy Zimmerman, Sally Sweeden, and Krystle Williams.[5] Mr. Zimmerman is a parole officer for the Arkansas Division of Community Correction.[6]

---

[1] *See* Compl. (Doc. 1) ¶ 3.

[2] *See id.* ¶¶ 38–50.

[3] *See id.* ¶¶ 51–59.

[4] *See id.* ¶¶ 60–63.

[5] Each State Defendant has been sued in his or her individual capacity as well as his or her official capacity. *See id.* ¶ 7(a)–(c).

[6] *See id.* ¶ 7(a).

Ms. Sweeden is an assistant area manager for the Arkansas Division of Community Correction.[7] Ms. Williams is an area manager for the Arkansas Division of Community Correction.[8] The private Defendants are Holly Jackson and Hollys Daycare LLC.[9]

The State Defendants have moved to dismiss all claims against them.[10] For the reasons discussed below, the Court grants that Motion.

I.  **Background Facts**

Taking the factual allegations in the Complaint as true—which we must do at this stage[11]—the Court understands the basic story to be as follows. In 1998, Mr. Sera was convicted of rape (among other things) and sentenced to 30 years in prison.[12] As a result of his convictions, he is a Level IV sex offender.[13] In February of 2024, the Arkansas Division of Community Correction's Post-Prison Transfer Board granted Mr. Sera parole "subject to a valid parole plan."[14] On July 25,

---

[7] *See id.* ¶ 7(c).

[8] *See id.* ¶ 7(b).

[9] *See id.* ¶ 7(d)–(e). Although Plaintiffs name Hollys Daycare LLC as a Defendant, it does not appear that they bring any causes of action against Hollys Daycare LLC.

[10] *See* Mot. to Dismiss (Doc. 18). The private Defendants have not responded in any way to the Complaint. *See generally Sera v. Zimmerman*, 4:24-cv-00817-LPR (E.D. Ark. filed Sep. 24, 2024) (docket sheet).

[11] *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true when considering a motion to dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

[12] Compl. (Doc. 1) ¶¶ 6(a)(i), 10.

[13] *Id.* ¶ 6(a)(ii).

[14] *See id.* ¶ 6(a)(iii). Under Arkansas law, "[t]he Post-Prison Transfer Board may release on parole any eligible inmate who is confined in any correctional institution . . . when in the board's opinion there is a reasonable probability that the inmate can be released without detriment to the community or himself . . . and is able and willing to fulfill the obligations of a law-abiding citizen." Ark. Code Ann. § 16-93-701(a)(1). In most cases, a parole-eligible inmate must be interviewed by the Post-Prison Transfer Board, a revocation hearing judge, or an investigator employed by the board. Ark. Code Ann. § 16-93-701(b)(1). And "parole shall be ordered only for the best interest of society and shall not be considered as a reduction of sentence or pardon." Ark. Code Ann. § 16-93-701(b)(2). An inmate on parole "shall remain in the legal custody of the agency from which he . . . was released . . . ." Ark. Code Ann. § 16-93-701(b)(3). Mr. Sera appears to have received a "Release Subject to Suitable Plan," a common form of Board action. *See* 146.00.90 Ark. Code R. § 001(XI). Therefore, Mr. Sera would only be released on or after his parole eligibility date if "a release plan [had] been accepted by the parole supervising authority (Parole Services, in Arkansas)." *See id.* Relevant to Mr. Sera's release plan requirement is the fact that, as a Level IV offender under

2024, Mr. Sera submitted a parole plan to the proper authorities.[15] This parole plan had him living alone at 80 Grant 461802 in Sheridan, Arkansas.[16] The Sera Trust bought and developed this land for Mr. Sera after the Grant County Sheriff (not a defendant here) told Mr. Sera's family that this piece of land was compliant with the legal rules related to where a sex offender like Mr. Sera may live.[17]

On August 9, 2024, Parole Officer Zimmerman rejected Mr. Sera's parole plan.[18] Parole Officer Zimmerman's stated reason for the denial was that "Hollys Daycare, a licensed business, is located at 193 Grant 4618, which is less than 800 feet from the proposed residence."[19] In reality, however, there was no such business.[20] On August 15, 2024, Holly Jackson told a Sera family private investigator (who went to Ms. Jackson's house at 193 Grant 4618) that no such business existed.[21] Additionally, the private investigator's description of the house is inconsistent with a daycare facility.[22] And Hollys Daycare was not licensed with the Arkansas Department of Human Services or the Arkansas Department of Education (or their federal counterparts).[23] On August 19, 2024, Plaintiffs' counsel wrote to Assistant Area Manager Sweeden and Area Manager Williams,

---

SORNA, he "may not knowingly reside within two thousand feet . . . of the property on which a . . . daycare facility is located . . . ." Ark. Code Ann. § 5-14-128(a)(1).

[15] Compl. (Doc. 1) ¶ 12.

[16] *Id.*

[17] *Id.*

[18] *Id.* ¶ 14.

[19] *Id.*

[20] *Id.* ¶ 15.

[21] *Id.* ¶¶ 16, 18; *see also id.* at 25. The investigator's report did note that Ms. Jackson told the investigator that she was "thinking about starting [a daycare]." *Id.*

[22] *See id.* ¶¶ 16–17, 19; *see also id.* at 26.

[23] *See id.* ¶ 15.

informing them of the private investigator's findings and characterizing the reason for the parole plan denial as a lie.[24]  Sweeden and Williams took no corrective action.[25]

On August 20, 2024, 11 days after the parole plan denial, Holly Jackson formed Hollys Daycare LLC by filing the necessary paperwork with the Arkansas Secretary of State.[26]  But no business actually operated under that name.[27]  Hollys Daycare was still not licensed with the Arkansas Department of Human Services or the Arkansas Department of Education (or their federal counterparts).[28]  There are no tax records or other government records demonstrating that Hollys Daycare ever actually operated.[29]

Sometime between August 20 and August 26, 2024, Mr. Sera submitted a second parole plan.[30]  On August 26, 2024, Parole Officer Zimmerman again rejected the plan.[31]  Parole Officer Zimmerman explained the rejection thusly: "Hollys Daycare LLC, a licensed business, is located at 193 Grant 4618, which is less than 800 feet from the proposed residence of the offender, which is located at 80 Grant 461802 . . . .  The business license is current."[32]  In reality, however, there was no valid business license for Hollys Daycare and no such business ever operated.[33]  On August

---

[24] *Id.* ¶ 20.

[25] *Id.*

[26] *Id.* ¶ 21.

[27] *Id.*

[28] *See id.* ¶ 22.

[29] *Id.*

[30] *See id.* ¶ 24.

[31] *Id.*  Mr. Sera was also informed that he may not submit a third release plan using the same release-residence address as he listed in the first two plans.  *Id.* ¶ 25.  To Mr. Sera's knowledge, this prohibition was not based on any formal regulation, but it may have been based on an informal or internal policy of the Arkansas Division of Community Correction.  *See id.*

[32] *Id.* ¶ 24.

[33] *Id.*

4

28, 2024, the Sera family's private investigator visited Holly Jackson's home for a second time.[34] Again, she found no daycare operating, and what she did find was entirely inconsistent with an operating daycare.[35] On social media, it appears that Ms. Jackson's sole business is a cleaning service.[36]

Mr. Sera believed (and still believes) that Parole Officer Zimmerman knew—when he denied the first parole plan submission and then again when he denied the second parole plan submission—that Ms. Jackson was not running a daycare from her home because Parole Officer Zimmerman had visited the home and spoke with her.[37] Mr. Sera believed (and still believes) that Parole Officer Zimmerman knew—when he denied the first parole plan submission and then again when he denied the second parole plan submission—that Hollys Daycare did not have a business license and was not operating.[38] Mr. Sera believed (and still believes) that Parole Officer Zimmerman conspired with, and counseled, Ms. Jackson to manufacture a fake daycare business (including by filing with the Arkansas Secretary of State) to prevent Mr. Sera's parole to his planned parole residence.[39]

Regardless of whether Mr. Sera's beliefs concerning the existence of conspiracy and/or the misconduct of Parole Officer Zimmerman are reasonable inferences or instead amount to speculation, those beliefs caused Mr. Sera to bring the instant lawsuit in September of 2024.[40] In addition to filing the lawsuit, Mr. Sera filed a Motion for Preliminary Injunction, seeking (*inter*

---

[34] *Id.* ¶ 26.

[35] *Id.* ¶¶ 26–27; *id.* at 47–54. At that time, Ms. Jackson's boyfriend told the investigator that "Zimmerman had a copy of the license . . . ." *Id.* ¶ 29.

[36] *See id.* ¶ 36; *id* at 43–44.

[37] *See id.* ¶ 33.

[38] *See id.*

[39] *See id.* ¶ 34.

[40] *See id.* at 1.

*alia*) approval of his parole plan.[41] The Court never decided that Motion because, in October of 2024, Mr. Sera was paroled—apparently to the residence that was in his two rejected parole plans.[42]

## II. Mootness

The Complaint requested the following relief: (1) "a mandatory injunction ordering [the state Defendants] to approve [Mr. Sera's] parole plan"; (2) an injunction barring Defendant Zimmerman "from supervising [Mr. Sera] on parole"; (3) "at least $2,000" for each day his parole was wrongfully delayed; (4) $150,000 to compensate the Sera Family Trust for purchasing and developing a property to which Mr. Sera should have been paroled absent the wrongful delay described above; and (5) punitive damages.[43]

Subsequent to the filing of the Complaint, however, Mr. Sera was paroled.[44] That moots at least two of the five requests for relief: (1) the request for a mandatory injunction ordering approval of Mr. Sera's parole plan, and (2) the $150,000 damages request to compensate the Sera Family Trust.[45] What's left, then, is Mr. Sera's compensatory and punitive damages requests and

---

[41] Doc. 2.

[42] *See* Mot. to Withdraw Pet. for Prelim. Inj. (Doc. 20); Resp. to Mot. to Dismiss (Doc. 25) at 1. The fact of Mr. Sera's parole is not alleged in the Complaint. (The Complaint was filed before Mr. Sera was paroled and has not been amended.) Nonetheless, the Court may consider it. First, the granting of parole may moot certain claims and requests for relief in this case. So the fact of Mr. Sera's parole goes to mootness, which the Court may inquire into (both facially and factually) *sua sponte*. *See Perficient, Inc. v. Munley*, 973 F.3d 914, 916 (8th Cir. 2020) ("We must consider the jurisdictional issue of mootness *sua sponte*."); *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (holding that a court evaluating a mootness-based factual attack on jurisdiction can consider matters outside the pleadings). Second, Mr. Sera has provided a public record showing that he was actually paroled on October 14, 2024, and the State Defendants do not contest the authenticity or content of the record. *See* Resp. to Mot. to Dismiss (Doc. 25) at 1. In these circumstances, the Court may take judicial notice of and consider the record at the motion to dismiss stage. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (2017) (quoting *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

[43] Compl. (Doc. 1) ¶¶ 65–66, 70–72.

[44] *See* Mot. to Withdraw Pet. for Prelim. Inj. (Doc. 20); Resp. to Mot. to Dismiss (Doc. 25) at 1.

[45] The only relief requested by the Sera Family Trust was $150,000 in damages for the money it spent purchasing and developing the property at 80 Grant 461802 in anticipation of Mr. Sera being paroled there. It is not clear under what legal theory the Complaint was asserting that the Sera Family Trust could recover $150,000. But it appears that any such theory of recovery would relate to the Sera Family Trust spending money on the property with the unfulfilled expectation that Mr. Sera would live there while on parole. Because Mr. Sera is now on parole and living at the

the request for an injunction ordering that Mr. Sera's parole be supervised by someone other than Parole Officer Zimmerman.

### III. 42 U.S.C. § 1983 and 42 U.S.C. § 1985 Official Capacity Claims

The official capacity claims against the State Defendants must be dismissed. Official capacity claims against employees or agents of the State are treated as claims against the State itself.[46] And it is clear that damages claims brought under § 1983 and § 1985 are barred by the doctrine of sovereign immunity enshrined in the Eleventh Amendment to the United States Constitution.[47] With respect to the remaining injunctive relief request, it is true that, pursuant to *Ex parte Young,* a claim can go forward to the extent it seeks to enjoin a state official from future conduct violative of the federal constitution or federal law.[48] But that is not the type of injunctive relief sought here. The request to remove Parole Officer Zimmerman from his role as Mr. Sera's

---

property purchased by the Sera Family Trust, no damages remedy would make any sense here. Any case and controversy between the Sera Family Trust and Defendants is moot.

[46] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Gordon v. Bd. of Trs. of the Univ. of Ark.*, 168 F. Supp. 3d 1148, 1154 (E.D. Ark. 2016) (treating official capacity § 1983 and § 1985 claims against state officials as claims against the state itself); *see also Mendez v. Bocanegra*, No. 20-cv-1438, 2022 WL 2910004, *2 (D. Minn. May 25, 2022) (treating official capacity § 1985 claims against federal officers as claims against the United States).

[47] *See Edelman v. Jordan*, 415 U.S. 651, 675–677 (1974) (holding that Congress has not abrogated state sovereign immunity for § 1983 damages claims); *Smuda v. Johnston*, No. 24-CV-3215, 2025 WL 1156002, *1 (D. Minn. Apr. 21, 2025) (holding that Congress has not abrogated state sovereign immunity for § 1983 or § 1985 claims); *Gordon*, 168 F. Supp. 3d at 1154 (same); *Rodgers v. Univ. of Mo. Bd. of Curators*, 56 F. Supp. 3d 1037, 1049–50 (E.D. Mo. 2014) (same), *aff'd as modified sub nom. by Rodgers v. Curators of Univ. of Mo. Sys.*, 634 Fed. App'x 598 (8th Cir. 2015) (per curiam); *Begun v. State Bd. of Registration for Healing Arts*, 531 F. Supp. 955, 956 (E.D. Mo. Jan. 5, 1982) (same).

[48] *See Mo. Child Care Ass'n v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002). The *Ex parte Young* doctrine "carves out an exception" to the "fundamental rule" of state sovereign immunity: "state officials may be sued in their official capacities for prospective injunctive relief when the plaintiff alleges that the officials are acting in violation of the Constitution or federal law." *Id.* Such a suit is possible because, "when a state official acts in violation of the Constitution or federal law, he is acting *ultra vires* and is no longer entitled to the State's immunity from suit." *Gibson v. Ark. Dep't of Corr.*, 265 F.3d 718, 719 (8th Cir. 2001). "In effect, *Ex parte Young* creates a legal fiction: a state official stops being a state official when he does something contrary to federal law." *Id.* at 719–20. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018) (cleaned up) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

parole supervisor is not a request to stop Parole Officer Zimmerman from engaging in a particular course of conduct violative of federal statutes or the federal Constitution.[49]

IV.    42 U.S.C. § 1983 Individual Capacity Claims Against Sweeden and Williams

The only federal claims alleged against Sweeden and Williams are § 1983 claims.[50] And the only allegations made against them are that (1) they received a letter from Plaintiffs' counsel decrying Parole Officer Zimmerman's reason for the first parole denial as false, and (2) they took no discernable action.[51] The problem for Plaintiffs is that, under § 1983, a person can be liable only for his or her own act or omission. Put another way, there is no *respondeat superior* liability in § 1983 cases.[52] Nothing Sweeden did or did not do constituted a violation of the Due Process Clause or the Fourth Amendment. The same goes for Williams. Accordingly, the individual capacity § 1983 claims against them fail to state viable causes of action.[53]

---

[49] *Cf. Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 878 (D. Minn. 2021) (finding *Ex parte Young* inapplicable where state official's enforcement action allegedly violated state constitution); *Gray v. Devils Lake Pub. Schs.*, 316 F. Supp. 3d 1092, 1100 (D.N.D. 2018) ("The *Ex parte Young* exception applies only to officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" (quoting *Ex parte Young*, 209 U.S. 123, 156 (1908))).

[50] The Complaint does not allege that Sweeden and Willaims are liable for a § 1985 conspiracy. *See* Compl. (Doc. 1) ¶¶ 52–59.

[51] *See id.* ¶ 42.

[52] *See Montgomery v. City of Ames*, 829 F.3d 968, 973 (8th Cir. 2016).

[53] As for § 1983 claims against Holly Jackson—to the extent Plaintiffs are pleading any—they aren't viable either. Only state actors can be held liable under § 1983, and Plaintiffs have not pled facts sufficient to make it plausible that Ms. Jackson is a state actor. *See Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). At absolute most, the allegations might make it plausible that she falsely claimed to have a daycare business because Parole Officer Zimmerman told her that was a way to stop a sex offender from living near her. That's nowhere close to the sort of activity that transforms a private actor into a state actor for purposes of § 1983.

"A private party who willfully participates in joint activity with the State or its agents is considered a state actor." *Youngblood*, 266 F.3d at 855. And in the Eighth Circuit, "to survive a motion to dismiss, . . . a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997) (quoting *Mershon v. Beasley*, 944 F.2d 449, 451 (8th Cir. 1993)). The Complaint does not sufficiently plead such allegations. Specifically, the portions of the Complaint alleging the existence of a conspiracy between Parole Officer Zimmerman and Ms. Jackson are either hopelessly conclusory, *see* Compl. (Doc. 1) ¶¶ 7(d), 22–23, 52, or completely speculative, *see id.* ¶¶ 29, 34, 35, 40, 56. Plaintiffs fail to state facts which, if taken as true, would allow the Court to draw the reasonable inference that Ms. Jackson and Parole Officer Zimmerman actually and intentionally acted in concert. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556

V.      **42 U.S.C. § 1983 Claims Against Zimmerman**

Although the State Defendants set out several merits-based reasons that the § 1983 claims against Parole Officer Zimmerman fail, they also contend that these claims are barred by *Heck v. Humphrey*.[54] In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .[55]

In shorthand, this is often referred to as the favorable-termination requirement.

According to the State Defendants, *Heck* is applicable because Plaintiffs are seeking damages for "the approximately 66 days of wrongful incarceration" between the first alleged fraudulent parole plan denial (August 9, 2024) and Mr. Sera's actual release (October 14, 2024).[56] Also, according to the State Defendants, *Heck* is dispositive because Plaintiffs have not alleged that Mr. Sera's sentence was reversed on direct appeal, expunged by executive order, declared

---

(2007)). Do the stated facts suggest the possibility of a conspiracy? Yes. Do they make such a conspiracy plausible? No. Accordingly, any § 1983 claims against Ms. Jackson must be dismissed.

The Court recognizes that Ms. Jackson did not file a motion seeking dismissal of any claims brought against her. (Nor did she otherwise respond to the Complaint.) But were the Court to substantively address a motion for default judgment from Plaintiffs, the Court would have to evaluate whether the Complaint stated viable claims against Ms. Jackson. *See Marshall v. Baggett*, 616 F.3d 849, 852–53 (8th Cir. 2010) (holding that in entering default judgment, "it is incumbent upon the district court to ensure that 'the unchallenged facts constitute a legitimate cause of action' prior to entering final judgment" (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010))). For purposes of judicial efficiency, the Court elects to address the claims brought (or potentially brought) against Ms. Jackson in the instant Order. *See Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (holding that a district court can issue *sua sponte* 12(b)(6) dismissal so long as dismissal does not precede service of process).

[54] 512 U.S. 477 (1994); Br. in Supp. of Mot. to Dismiss (Doc. 19) at 2–3.

[55] *Heck*, 512 U.S. at 486–87.

[56] Reply in Supp. of Mot. to Dismiss (Doc. 29) at 1–3; *see also* Resp. in Opp'n to Mot. to Dismiss (Doc. 25) at 2–3.

9

invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.[57]

The Court declines to resolve the *Heck* issue at this time. The better read of *Heck* is that the favorable-termination requirement announced therein is not jurisdictional in nature.[58] So the Court can jump over the potential *Heck* bar to resolve this case on another merits-related ground.

---

[57] Reply in Supp. of Mot. to Dismiss (Doc. 29) at 1–2; *see also* Resp. in Opp'n to Mot. to Dismiss (Doc. 25) at 2, 5. *Entzi v. Redmann* makes absolutely clear—with no room at all for doubt—that (1) in the Eighth Circuit, the *Heck* bar applies to damages claims that would imply that the duration of a plaintiff's sentence was unlawful; and (2) in the Eighth Circuit, this is true even where a writ of habeas corpus is no longer available because, for example, the plaintiff is no longer in custody. 485 F.3d 998, 1003 (8th Cir. 2007). With its opinion in *Entzi,* the Eighth Circuit took one side of a deep circuit split concerning the meaning, binding nature, and scope of footnote 10 in *Heck*. *See Heck*, 512 U.S. at 490 n.10; *see also Wilson v. Midland County*, 116 F.4th 384, 405–08, 406 n.12 (5th Cir. 2024) (en banc) (Willett, J., dissenting). The Eighth Circuit treats—and thus requires this Court to treat—the content of *Heck*'s footnote 10 as binding precedent. *See Entzi* 485 F.3d at 1003. Nothing in post-*Entzi* Supreme Court cases calls this position into doubt in a clear enough way to allow this Court to slip the surly bonds of *Entzi*. It is true that, in *Muhammad v. Close*, the Supreme Court explained that some "[m]embers of the Court have expressed the view that unavailability of habeas . . . may also dispense with the Heck requirement," and also explained that the case was "no occasion to settle the issue." 540 U.S. 749, 752 n.2 (2004) (per curiam). But this dicta from *Muhammed* not enough, and the Eighth Circuit has said so explicitly. *See Newmy v. Johnson*, 758 F.3d 1008, 1010–12 (8th Cir. 2014); *see also Thomas v. Eschen* 928 F.3d 709, 713 (8th Cir. 2019) (citing *Entzi* approvingly).

[58] The Eighth Circuit has acknowledged a circuit split concerning whether the requirement is a jurisdictional one or instead is simply an indispensable part of a viable cause of action. *See Mitchell v. Kirchmeier*, 28 F.4th 888, 895 n.1 (8th Cir. 2022); *see also Baca v. City of Parkville*, No. 19-cv-06057, 2022 WL 1477445, *5 (W.D. Mo. May 10, 2022) (collecting cases from district courts within the Eighth Circuit). And the Eighth Circuit has studiously avoided taking a position on the question. *See Mitchell*, 28 F.4th at 895 n.1. The Court finds that the non-jurisdictional side of the split has the better of the argument. *See, e.g.*, *Vuyanich v. Smithton Borough*, 5 F.4th 379, 389 (3rd Cir. 2021); *Colvin v. LeBlanc*, 2 F.4th 494, 498–99 (5th Cir. 2021); *Polzin v. Gage*, 636 F.3d 834, 837–38 (7th Cir. 2011). *Heck* resolved a question about the scope of § 1983 claims. *See Colvin*, 2 F.4th at 498. That question was whether "damages claims that . . . call into question the lawfulness of conviction or confinement" are available under § 1983. *Heck*, 512 U.S. at 483. In answering that question in the negative, the Supreme Court relied on an extended analogy to malicious prosecution tort claims. *See id.* at 483–86. The Supreme Court noted that "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Id.* at 484. And the Supreme Court held that § 1983 actions that call into question the lawfulness of conviction or confinement had an analogous favorable-termination requirement. *Id.* at 486–87. This analogical reasoning strongly supports the conclusion that the favorable-termination requirement in *Heck* cases is to be treated like a required element of a cause of action rather than a jurisdictional prerequisite. And the complete lack of jurisdictional language in *Heck* confirms this conclusion. *See Vuyanich*, 5 F.4th at 389.

It is important to note that the Court is not deciding this issue in a vacuum. The Supreme Court has expressed a strong preference against lower courts finding issues to be jurisdictional. *See, e.g.*, *Fort Bend County v. Davis*, 587 U.S. 541, 547–48 ("In recent years, [we have] undertaken '[t]o ward off profligate use of the term [jurisdictional].'" (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013))); *see also Verizon Md., Inc.*, 535 U.S. at 642–43 ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . . ." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)). The Court sees no reason to defy that preference here.

And, in the present circumstances, the Court concludes it should take this course. This is so for two reasons.

First, the Court is not entirely sure whether Mr. Sera's parole—which appears to be based on the initially rejected second parole plan and thus implies that the second parole plan should never have been rejected[59]—counts as a favorable termination for purposes of *Heck*. Although the State Defendants are correct that Mr. Sera's release does not neatly fit into any of the favorable-termination categories identified in *Heck* itself, a much more recent Supreme Court case (*Thompson v. Clark*) suggests that favorable termination is a broader concept and can include things like the government dropping a prosecution.[60] Whether and how the *Thompson* standard applies in *Heck* cases and whether the government dropping charges is analogous to the government changing positions on a parole plan present difficult questions in an already difficult area of law.[61]

Second, and on the other hand, there is a different and dispositive merits-based issue that is easily resolved: whether, in Arkansas, denial of a parole plan implicates a liberty interest protected by the United States Constitution. In the Court's view, the analysis set forth in a 2008 Eastern District of Arkansas case (*Hodges v. Norris*) is both persuasive and applicable in the instant

---

[59] To be clear, Mr. Sera's briefing suggests that he did not submit a third parole plan, but rather that the Arkansas Department of Community Correction reversed course and approved Mr. Sera's second parole plan. *See* Resp. in Opp'n to Mot. to Dismiss (Doc. 29) at 2–3; *see also* Compl. (Doc. 1) ¶ 25 (alleging that Sera was informed that he would not be allowed to submit a third parole plan for the same address).

[60] *Thompson v. Clark*, 596 U.S. 36, 48–49 (2022). While *Thompson* was not a *Heck* case, it cited *Heck* for the proposition that § 1983 Fourth Amendment malicious prosecution claims have a favorable-termination requirement. *See id.* at 39 (citing *Heck*, 512 U.S. at 484, 484 n.4).

[61] To put a finer point on it, one could read *Heck* and its progeny as (1) requiring a favorable termination of the original conviction and confinement, or (2) merely requiring a favorable termination of the challenged parole determination.

circumstances.[62] And that analysis tells us that denial of a parole plan does not implicate a liberty interest protected by the United States Constitution.

> The Fourteenth Amendment to the Constitution provides in part that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Protected liberty interests may arise from the Due Process Clause itself or from state laws. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). The United States Supreme Court has held that a convicted person has no federal constitutional or inherent right "to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The mere possibility of parole, without more, provides no more than a hope that the benefit will be obtained and does not create an entitlement to due process under the Fourteenth Amendment. *Id.* at 11; *see Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (inmate has no constitutionally protected liberty interest in the possibility of parole).
>
> In establishing a parole system, a state may, nevertheless, create a liberty interest that is protectible under the Fourteenth Amendment. *Greenholtz*, 442 U.S. at 12; *see Board of Pardons v. Allen*, 482 U.S. 369, 373-81 (1987). However, nothing in the Arkansas parole statutes creates anything more than a mere possibility of parole, and thus the statutes do not establish any right to release on parole which would invoke due process protection. *Pittman v. Gaines*, 905 F.2d 199, 201 (8th Cir. 1990); *Parker v. Corrothers*, 750 F.2d 653, 655–57 (8th Cir. 1984); *Robinson v. Mabry*, 476 F. Supp. 1022, 1023 (E.D. Ark. 1979); *see Allen*, 482 U.S. at 378 n.10.
>
> Instead, the statutes place minimal limitations on the Board's discretion and provide that the Board "may" release an individual on parole when, in its opinion, there is a reasonable probability that he can be released without detriment to the community or himself. Ark. Code Ann. § 16-93-701(a)(1). The statutes regarding transfer eligibility expressly state that "[n]othing in this subchapter shall grant any offender the right to be sentenced or transferred under these provisions as a matter of right." *Id.* § 16-93-1210. The statutes also clearly provide for discretion on the part of the Board in setting conditions for parole and in determining if or when a particular inmate will be paroled or transferred from the ADC to DCC supervision. *E.g., id.* §§ 16-93-206(a)(1), (e)(1) & (f), 16-93-1302. As stated by the Arkansas Supreme Court, the Board "retains the power over who shall be placed on parole, and the time and conditions of parole." *Hodges v. Norris*, No. 02-786, 2004 WL 439982, *2 (Ark. Sup. Ct. Mar. 11, 2004) (unpub. op.).
>
> The Arkansas Supreme Court has repeatedly emphasized the broad discretionary authority granted to the Board under the state's parole and transfer statutes. *Michalek v. Lockhart*, 730 S.W.2d 210, 211 (Ark. 1987); *see Dougan v. Ford*, No. 04-623, 2005 WL 2387576, *2 (Ark. Sup. Ct. Sept. 29, 2005) (unpub.) ("If the

---

[62] No. 07cv00062, 2008 WL 80547, *1 (E.D. Ark. Jan. 3, 2008).

conditions [set by the Board] are too onerous, appellant could decline to accept the conditions set, and elect to serve out his sentence instead."); *Hodges*, *supra* at *2 (holding that completion of sex offender treatment program as a condition for parole was "well within the Board's discretionary power"); *Ensey v. Norris*, No. 99-752, 2001 WL 469154, *2 (Ark. Sup. Ct. May 3, 2001) (same); *Maxie v. Gaines*, No. 94-313, 1994 WL 571967, *1 (Ark. Sup. Ct. Oct. 10, 1994) ("the statute which provides in pertinent part that the parole board may release an eligible prisoner under certain conditions . . . does not create a liberty interest in parole; that is, the board's determinations regarding parole are discretionary").

When a prisoner is committed to the custody of a state penal authority, such as the ADC, "he can be assured of only one thing—that he will be released from the State's custody at the end of the term of years specified by the sentencing court." *Richmond v. Duke*, 909 F. Supp. 626, 631 (E.D. Ark. 1995). Petitioner has no federal or state liberty interest in the possibility of obtaining parole, and he is thus not entitled to any due process protections in connection with his parole proceedings or the particular conditions imposed by the Board or the DCC in their discretion. *See Henderson v. Campbell*, 975 F.2d 866 (8th Cir. 1992) (unpub. table op.) (dismissing civil rights complaint seeking approval of preferred parole-release plan or explanation as to why plan was unsuitable; holding that claim did not rise to level of constitutional violation "[b]ecause parole officers possess wide discretion in imposing conditions of parole"). Petitioner's due process claim should be dismissed.[63]

Without a protected liberty interest, there's no way Plaintiffs can make out a procedural or substantive due process violation to support a § 1983 claim.[64] Nor can Plaintiffs make out a Fourth Amendment violation. Because Mr. Sera had no protectable liberty interest (or right) in being let out of prison before the end of his full sentence, Plaintiffs can't claim that the denial of Mr. Sera's parole plan—which required him to stay in prison—constituted a wrongfully elongated seizure.[65]

---

[63] *Id.* at *3–4.

[64] To state a viable procedural due process claim, "a plaintiff . . . must establish that his protected liberty or property interest is at stake." *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011) (quoting *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999)). With respect to substantive due process, "a party who claims that a defendant violated her substantive due process rights must show that she has a 'protected life, liberty, or property interest.'" *Grooms v. Privette*, 127 F.4th 730, 736 (8th Cir. 2025) (quoting *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc)). So, because there is no protected liberty interest in the possibility of parole, neither set of claims is viable. *See Hamilton v. Brownlee*, 237 Fed. App'x 114, 115 (8th Cir. 2007) (per curiam).

[65] A seizure is unreasonable if it exceeds the scope of its justification. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Mr. Sera's incarceration cannot have been unreasonable because it did not exceed the scope of its justification, *i.e.*, his valid criminal conviction.

Plaintiffs raise two factual distinctions between this case and *Hodges*. First, they say that *Hodges* was a habeas case and the instant case is a § 1983 case.[66] But that's a distinction without a difference. The protected-liberty-interest analysis doesn't change between those two types of cases.[67] Second, Plaintiffs say that there "was . . . a factual basis" for the rejection of the parole plans in *Hodges*, whereas the parole plan denials in the instant case were malicious, in bad faith, and represent "sham [decisions] to keep an inmate in jail just because the parole officer can."[68] Assuming *arguendo* that this alleged difference between the parole plan denials in the two cases is right, that certainly makes the result in the instant case less palatable from a policy perspective than the result in *Hodges*. But the difference has no bearing on the strength or applicability of the protected-liberty-interest analysis set out in *Hodges*. A federal court's remit is not to superintend state officials to make sure they don't behave badly. Put another way, whether a person has a protected liberty interest is an entirely different question from how awful a state official's behavior is.[69] And a court should not—indeed, a court may not—stretch the scope of what constitutes a protected liberty interest based on its feelings about the egregiousness of a state official's behavior.

---

[66] Resp. in Opp'n to Mot. to Dismiss (Doc. 25) at 3.

[67] *Compare Schmidt*, 655 F.3d at 817 (applying the protected-liberty-interest analysis in the § 1983 context), *with Chitwood v. Dowd*, 889 F.2d 781, 786 (8th Cir. 1989) (applying the protected-liberty-interest analysis in the habeas corpus context).

[68] Resp. in Opp'n to Mot. to Dismiss (Doc. 25) at 4.

[69] *See, e.g.*, *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (complete failure of prison officials to process prisoners' grievances doesn't implicate protected liberty interest); *Smith v. Starr*, No. 22-CV-0159, 2022 WL 3135305, *2 (D. Minn. Aug. 5, 2022) (three-day stint in solitary confinement did not infringe upon a protected liberty interest, even if imposed without cause); *Stamm v. County of Cheyenne*, 326 F. Supp. 3d 832, 858 (D. Neb. 2018) (holding that a plaintiff whose personal information was accessed and spread by local officers hadn't suffered a Fourth Amendment injury because reputation isn't a protected liberty interest). The Court notes that its holding that Plaintiffs have not sufficiently alleged a Fourth Amendment violation (or a due process violation) should not be interpreted as a suggestion that Defendants did nothing wrong. Indeed, the Court's holding should not be interpreted as a suggestion that Mr. Sera is not entitled to some other form of relief for harms suffered due to the parole denials (such as, perhaps, state law remedies).

The bottom line is that the § 1983 claims against Parole Officer Zimmerman fail to state a viable claim and thus must be dismissed.

### VI.   42 U.S.C. § 1985 Claims against Zimmerman and Jackson

Plaintiffs allege that Parole Officer Zimmerman and Ms. Jackson jointly violated § 1985(3). There are two fatal deficiencies with these claims. First, the Complaint does not allege that the purpose, object, or result of the conspiracy was to deny Mr. Sera the equal protection of the laws.[70] Second, as explained above, Mr. Sera had no protected liberty interest (*i.e.*, right) to be released on parole. Accordingly, even accepting the allegations in the Complaint as true, the asserted conspiracy did not and indeed could not have violated Mr. Sera's due process rights or his Fourth Amendment rights. In short, the § 1985 claims are not viable and must be dismissed.[71]

---

[70] "In order to prove the existence of a civil rights conspiracy under § 1985(3), the [plaintiff] must prove: (1) that the defendants did conspire, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws, (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, and (4) that another person was injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States." *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012) (cleaned up) (quoting *Larson ex rel. Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996)). "The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based invidiously discriminatory animus." *Id.* at 684–85 (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). There is an obvious problem for Plaintiffs: The Complaint doesn't allege that Defendants were motivated by any sort of class-based discriminatory animus. Even putting this problem aside, as the Court already explained in footnote 53 above, the Complaint did not sufficiently allege the existence of a conspiracy. *Cf. Johnson v. Perdue*, 862 F.3d 712, 717–18 (8th Cir. 2017) ("To state a claim for conspiracy under 42 U.S.C. § 1985(3), 'the plaintiff must allege with particularity . . . that the defendants reached an agreement.'" (quoting *City of Omaha*, 883 F.2d at 652)).

[71] As previously noted in today's Order, Ms. Jackson did not move to dismiss the claims against her (or otherwise respond to the Complaint). But Parole Officer Zimmerman moved to dismiss the claims against him, and that dismissal request covers the § 1985 claims. The Court's purely legal analysis applies as much to Ms. Jackson as it does to Parole Officer Zimmerman. Accordingly, in light of that legal analysis, it would be impossible for Plaintiffs to ever obtain a default judgment against Ms. Jackson on the § 1985 claims against her. *See Marshall*, 616 F.3d at 852–53. And because the only claims (apart from potential § 1983 claims dealt with earlier in this Order) brought against Ms. Jackson are the § 1985 claims, the Court believes that dismissal of all claims against Ms. Jackson is the appropriate result. *See Smith*, 945 F.2d at 1043 (8th Cir. 1991). The Court notes one side benefit here to Plaintiffs: This will allow Plaintiffs to pursue an appeal in a more efficient manner if they choose to do so.

## VII.  State Law Claims

Both parties contend (and the Court agrees) that the Court should decline to exercise supplemental jurisdiction over the state law claims if all of the federal claims are dismissed.[72]  The Court will not belabor the point given the radical agreement here.  Since the Court has dismissed all of the federal law claims, it declines to exercise supplemental jurisdiction over the remaining state law claims.

\*    \*    \*

None of the federal law claims in this case are viable.  So, they must be dismissed.[73]  As for the state law claims, they will also be dismissed because declining to exercise supplemental jurisdiction is appropriate in the context of this case.

IT IS SO ORDERED this 4th day of August 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[72] Br. in Supp. of Mot. to Dismiss (Doc. 19) at 10–11; Resp. in Opp'n to Mot. to Dismiss (Doc. 25) at 10.

[73] It does not appear that an amendment to the Complaint could fix the problems identified in today's Order.  So, the Court will proceed to issue a final judgment.  The Court acknowledges that, in their Response to the Motion to Dismiss, Plaintiffs twice noted that Mr. Sera's release on parole—which occurred after Plaintiffs filed their initial Complaint—might require or justify amending the Complaint.  Doc. 25 at 2.  But the Court has considered Mr. Sera's release (as if it was alleged in the Complaint) for purposes of today's Order.  *See supra* note 42.  Plaintiffs do not suggest they could or would amend their Complaint for any other reason.